UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

CASE NO. 00-6358-CR-DIMITROULEAS

UNITED STATES OF AMERICA,

vs.

ALEXANDER SWANSON,
a/k/a "Alexander Kerrick Miller,"

Defendant.
_____/

## DETENTION ORDER

Pursuant to Title 18 U.S.C. § 3142(f), on December 21, 2000, a hearing was held to determine whether the defendant, Alexander Swanson, a/k/a "Alexander Kerrick Miller," should be detained prior to trial. Having considered the factors enumerated in 18 U.S.C. § 3142(g), this Court finds that no condition or combination of conditions of release will reasonably ensure the appearance of this defendant as required. Therefore, it is hereby ordered that the defendant, Alexander Swanson, a/k/a "Alexander Kerrick Miller," be detained prior to trial and until the conclusion thereof.

In accordance with the provisions of 18 U.S.C. § 3142(i), the Court hereby makes the following findings of fact and statement of reasons for the detention:

1.  The defendant is charged with making a false statement in an application for



a passport, falsely representing himself to be a United States citizen, and perjury, in violation of 18 U.S.C. §§ 911, 1542, and 1621. Therefore, the defendant is charged with neither a crime of violence nor a crime involving a narcotic drug. 18 U.S.C. § 3142 (g)(1).

2.   The Court received credible evidence that the defendant committed the offenses with which he has been charged.   On September 13, 2000, the defendant applied for a U.S. passport and identified himself at that time as "Alexander Kerrick Miller." In support of that application, he produced a Florida birth certificate and a Florida driver's license in the name of Alexander Kerrick Miller; the driver's license also bore the defendant's photograph. The defendant signed the application, attesting to its truthfulness.

Upon receipt of the application, Governmental officials grew suspicious due to apparent inconsistencies between the information presented in the application and the documents presented in support thereof. By way of example, the defendant represented on his application that his father had been born in the Bahamas, whereas his birth certificate reflected that his father had been born in Puerto Rico. Further, he presented a Social Security number that had only recently been issued, notwithstanding that the defendant was almost thirty (30) years old. Also, the birth certificate reflected that the birth parents were of a race different from that of the defendant.

On November 30, 2000, the defendant was asked to appear at a Government office where he was interviewed by a law enforcement agent. The defendant told the agent that he had been born in Florida and lived in Jamaica. He stated that he did not know his mother and that his father had been born in the Bahamas. The defendant produced for the agent various identification documents, including credit cards in the name of Alexander Miller, Alexander Swanson, Dr. Alexander Miller, and Dr. Alexander Swanson. The

2

defendant admitted that he was not a doctor but stated that he was planning to attend a local university to become one. Further, the defendant possessed a Jamaican passport in the name of Alexander Kerrick Miller. He explained that he had acquired Jamaican citizenship by marrying a Jamaican woman. Subsequent investigation revealed that he obtained the Jamaican passport in June 2000; he had stated on his Jamaican passport application that his wife's name is Cheryl Miller and that she is a physician. Yet, on his U.S. passport application, the defendant stated that he is single.

The following day, a law enforcement agent conducted surveillance on the defendant's residence. The agent observed the defendant moving out of his residence. Subsequent investigation revealed that the defendant had broken his lease by virtue of the timing of his departure.

Upon contacting the Florida Bureau of Vital Statistics, the case agent learned that the serial number on the birth certificate the defendant had proffered in support of his U.S. passport application corresponded to a 1971 birth certificate issued in the name "Alexander Santiago." Further investigation revealed that someone had applied for and received a court order changing the name on that birth certificate from "Alexander Santiago" to "Alexander Miller." And a subsequent court order changed the name on the certificate of the birth father from "Ephraim Santiago" to "Donald Miller." The applications to amend the birth certificate had been notarized by the defendant's girlfriend. But even more importantly, investigation revealed that "Alexander Santiago" had actually died in 1985. The parents of Alexander Santiago were contacted and indicated they had no knowledge of any birth certificate revisions.

When agents went to arrest the defendant, they located him at a different (Miramar)

address from that at which he had originally been residing. Agents received from the defendant's girlfriend a consent to search the residence. Their search uncovered documents for a business that had been incorporated by Alexander Swanson ("Psychiatrist on Call") and documents of a medical firm ("Miller/Sacks/Hope"). Agents also located university degrees from the University of Florida and Emory University in the name Alexander Miller. The case agent contacted the University of Florida and learned that a medical doctor's degree had been awarded to a "Alexander Kerrick Miller" in 1961, several years prior to the various years of birth that have been claimed by the defendant. Furthermore, the Alexander Kerrick Miller who was awarded that 1961 medical degree was of a race different from that of the defendant. In addition, agents located at the defendant's residence a resume stating that the defendant practices psychiatry, an uncompleted application for a Bahamian passport, documents reflecting bank accounts in the names of Dr. Alexander Miller and Alexander Miller, a Visa card in the name of Vincent Baker, a Capitol One credit card in the name of Dr. Alexander Miller, a business card in the name of Alexander Swanson, and utility bills in the name of Vincent Baker.

A check of INS records under the name Alexander Swanson revealed that an individual by that name, a Jamaican citizen, entered the United States in 1996 on a six month business visa. That visa application shows a date of birth of 1969.

The defendant told Pretrial Services that he had been born in Miami in 1974; this date of birth is different from that he listed on the U.S. passport application. Further, he informed Pretrial Services that he had $800 in a bank account; however, agents located records showing that the defendant had $3,000 in at least one bank account as of December 9, 2000.   18 U.S.C. § 3142(g)(2).

4

3. The pertinent history and characteristics of the defendant are significant to this Court's assessment of his candidacy for bond. From the evidence presented, as well as from the Pretrial Services Report, this Court cannot with any certainty determine the defendant's true identity. He has employed multiple identities and multiple identification documents in support thereof. It appears, however, that he is not the "Alexander Kerrick Miller" he represented himself to be in the U. S. passport application. Given the defendant's elaborate efforts to alter his identity, his precipitous change of residence following his interview by the case agent, and his apparent foreign citizenship, the undersigned does not believe that he would be likely to appear if released on bond prior to trial. 18 U.S.C. § 3142(g)(3)(A) and (B)

4. The Government did not argue, and accordingly this Court does not find, that the defendant constitutes a danger to the community. 18 U.S.C. § 3142 (g)(4).

5. The Court specifically finds that there is no condition or combination of conditions of release that reasonably will ensure the defendant's appearance as required. 18 U.S.C. § 3142(e).

Based upon the above findings of fact, which were supported by clear and convincing evidence, the Court has concluded that this defendant presents a risk of flight if released on bond prior to trial. The Court hereby directs:

1. That the defendant be committed to the custody of the Attorney General for confinement in a corrections facility separate, to the extent practical, from persons awaiting or serving sentences or being held in custody pending appeal;

2. That the defendant be afforded reasonable opportunity for private consultation with counsel; and

5

3. That, on order of a court of the United States or on request of an attorney for the Government, the person in charge of the corrections facility in which the defendant is confined deliver the defendant to a United States Marshal for the purpose of an appearance in connection with a court proceeding.

DONE AND ORDERED at Fort Lauderdale, Florida this 22nd day of December 2000.

BARRY S. SELTZER
United States Magistrate Judge

Copies to:

Honorable William P. Dimitrouleas
United States District Judge

Robert Berube, Esquire
Assistant Federal Public Defender
Attorney for Defendant

Roger Powell, Esquire
Assistant United States Attorney

United States Marshal

United States Pretrial Services